JUAN BERNÁRD, en representación y como padre còn patria potestad de su hijo menor FRANCISCO BERNARD, demandante y apelante, *v.* PORTO RICO RAILWAY, LIGHT & POWER Co., demandada y apelada.

Núm. 8372.—*Sometido:* Marzo 19, 1942. *Resuelto:* Abril 9, 1942.

*Villamil & Santana Becerra* y *Pedro Juan Alcalá,* abogados del apelante; *Brown, González & Newsom* y *Carlos J. Faure,* abogados de la apelada.

EL JUEZ PRESIDENTE SEÑOR DEL TORO emitió la opinión del tribunal.

Juan Bernard, en representación y como padre con patria potestad sobre su hijo menor Francisco Bernard, demandó a la Porto Rico Railway, Light & Power Co., una compañía de servicio público que transporta pasajeros por medio de carros eléctricos, en reclamación de diez mil dólares por daños y perjuicios.

Alegó en su demanda, en resumen, que el 9 de marzo, 1937, y entre las paradas 6½ y 7 de la calle de San Agustín, Puerta de Tierra, San Juan, uno de los carros de la demandada arrolló al menor, ocasionándole contusiones y fracturándole el brazo derecho que hubo de serle amputado, debiéndose el accidente a la culpa del empleado de la demandada, el conductor Balasquide, quien mientras el cárro corría dió con un palo al menor que iba agarrado a la barandilla del carro por la parte exterior, haciéndolo caer y ocasionándole la fractura.

Negó los hechos de la demanda la demandada y alegó, como defensas especiales, que la demanda no aducía causa de acción; que si el accidente ocurrió, su causa próxima exclusiva fué la culpa, negligencia y conducta ilegal del perjudicado, y de sus padres; y que en el supuesto de que hubiera habido negligencia por parte de sus empleados, la hubo también por parte del menor y de sus padres.

Fué el pleito a juicio. Declararon testigos por una y otra parte y el caso quedó sometido al juez Sr. Pablo Berga para sentencia. El juez falleció antes de pronunciarla y las partes estipularon que fuera sometido para su resolución al juez Sr. La Costa, quien pesando la prueba a virtud del examen que hizo de la transcripción taquigráfica de la evidencia, se expresó en los siguientes términos:

"La única cuestión a resolver en este caso es una de hecho: ¿cuál fué la causa de la caída de Francisco Bernard? La prueba es contradictoria en cuanto a este extremo. Mientras los testigos del demandante declaran que Bernard se cayó del tranvía porque su

conductor venía, según unos, dándole cocotazos, y, según otros, pegándole con un palito o varita del grueso del dedo índice y como de un pie y medio de largo, los testigos de la demandada, todos pasajeros del tranvía, declaran no haber visto al conductor pegarle a dicho Bernard.

"Aunque no tuvimos la oportunidad de ver y oír declarar a los testigos, la experiencia de la vida nos hace darle crédito a los testigos de la demandada, y, especialmente, a los testigos Sra. Edna Lowe y Sr. José R. Vicente. Es de todos conocida la forma en que muchachos más o menos de la edad de Bernard acostumbran 'robarse un paseo' no solamente en los tranvías sino también en automóviles y 'guaguas.' Estos mozalbetes, conocedores de que están haciendo una cosa que no debían hacer, están muy pendientes del menor movimiento del conductor de dichos tranvías y vehículos, para lanzarse de los mismos, no siendo necesario que se les pegue para tal fin. La prueba del demandante demuestra, fuera de toda duda, que no era la primera vez que Bernard 'se robaba' un paseo en los tranvías de la demandada, así como que él sabía que estaba haciendo algo malo, ya que cada vez que dicho tranvía se paraba él se bajaba, agachándose para no ser visto y cuando el mismo reanudaba su marcha se colgaba otra vez.

"Analizada toda la evidencia a la luz de la ley y la jurisprudencia, llegamos a la conclusión de que la causa próxima, inmediata y directa del accidente lo fué la negligencia y conducta ilegal de Francisco Bernard al actuar en la forma en que lo hizo. 60 Corpus Juris, págs. 376 y 377, pár. 278; *Ramírez* v. *American R. R. Co.*, 23 D.P.R. 320.''

Luego, refiriéndose a la doctrina del peligro atrayente, dice:

"La doctrina de peligro atrayente a que el demandante se refiere en su memorándum de autoridades, no es de aplicación en casos de esta naturaleza.

" '. . . Ordinarily a man who is using his property in a public place is not obliged to employ a special guard to protect it from the intrusion of children, merely because an intruding child may be injured by it. We have all seen a boy climb up behind a chaise or other vehicle for the purpose of stealing a ride, sometimes incurring a good deal of risk. It has never been supposed that it is the duty of the owner of such vehicle to keep an outrider on purpose to drive such boys away, and that, if he does not, he is liable to any

boy who is injured while thus secretly stealing a ride. In such a case, no duty of care is incurred. In support of the doctrine many cases are cited to which may be added, as being in point, *Western Railway of Ala.* v. *Mutch*, 97 Ala. 194, 21 L.R.A. 316; *Catlett* v. *St. Louis I. M. & S. Co.*, 57 Ark. 461; S. C. 54 Am. & Eng. R. Cas. 113; *Chicago, B. & Q. R. R. Co.* v. *Stumps*, 69 Ill. 409; *Hestonville Pass. R. Co.* v. *Connell*, 88 Pa. 520, 32 Am. Rep. 472; *Rodgers* v. *Lees*, 140 Pa. 475, 12 L.R.A. 216; *Daniels* v. *New York & N.E.R.R. Co.*, 154 Mass. 349, 13 L.R.A. 248; *Snyder* v. *Hannibal & St. J. R. Co.* 60 Mo. 413; *Chicago & N. W. R. R. Co.* v. *Smith,* 46 Mich. 504, 41 Am. Rep. 177; Patterson, *Railway Accident Law*, Sec. 75.' *Jefferson* v. *Birmingham Railway etc. Co.*, 38 L.R.A. 458, 459.

"De la opinión en el caso de *Underwood* v. *Western & A. R. Co.*, 31 S. E. 123, copiamos lo siguiente:

" 'Nothing is more alluring to a child than a passing vehicle, whether it be a buggy, carriage, dump cart, wagon, or a railway train; and if railroads are to be liable because boys, without the knowledge of the employees in charge, attempt to swing upon their passing trains, then the owners of the other vehicles named would be equally liable if a boy, without the knowledge of the person in charge, was injured while attempting to swing upon the rear axle or other part of such vehicles.' "

Y por último, con respecto al caso de *Suárez* v. *Saavedra,* 52 D.P.R. 684, invocado por el demandante, concluye que no es de aplicación "ya que no le hemos dado crédito a la teoría del demandante de que el empleado de la demandada le pegaba al menor Francisco Bernard en los momentos en que éste se cayó del tranvía de la demandada."

Hemos estudiado las alegaciones y la transcripción de la evidencia a la luz de los alegatos de ambas partes y del informe oral de la apelada, única que compareció al acto de la vista del recurso, y estamos convencidos de que las conclusiones de hecho y de derecho a que llegara el juez sentenciador son las procedentes.

La declaración de Edna Rossy, de soltera Edna Lowe, que corrobora la versión del accidente dada por el conductor de la demandada y otros de sus testigos, en el sentido de que la caída no fué ocasionada por los golpes que diera el con-

ductor al menor Francisco Bernard, colocando así el caso fuera de la regla establecida en el de *Suárez* v. *Saavedra,* 52 D.P.R. 684, a saber: "El principal es responsable no sólo de los actos negligentes y descuidados sino de los actos criminales de su agente cometidos en el curso y dentro de las atribuciones de su empleo", nos parece clara, persuasiva, convincente.

La declarante fué sometida a un largo y hábil contrainterrogatorio y se mantuvo en lo dicho sin vacilaciones, sin incurrir en contradicciones, con seguridad y firmeza. Y la declarante era un testigo sin interés en el asunto en controversia.

Y dirimido el conflicto de la prueba en favor de la demandada, *se impone la confirmación de la sentencia.*

El Juez Asociado Sr. Travieso no intervino.