Eusebio Díaz Quiñones y Natividad Pagán, demandantes y apelantes, *v.* Central Lafayette, demandada y apelada.

Núm. 9359.—*Sometido:* Noviembre 14, 1946. *Resuelto:* Enero 20, 1947.

*Virgilio Brunet* y *Ubaldo Aponte,* abogados de los apelantes; *Adolfo Porrata Doria* y *F. J. Pérez Almiroty,* abogados de la apelada.

EL JUEZ ASOCIADO SEÑOR SNYDER emitió la opinión del tribunal.

La Central Lafayette, en vagones arrastrados por una locomotora, acarrea de las fincas a su factoría alguna de la caña que muele. Una de sus locomotoras subía por una pendiente quince vagones cargados de caña a una velocidad de cinco o seis millas por hora. Un niño de nueve años se acercó a uno de los vagones en movimiento y trató de sacar un pedazo de caña. La caña iba tan apretada que el niño fué arrastrado por el vagón. Cayó sobre la vía, siendo arrollado por las ruedas, a consecuencia de lo cual falleció. Sus padres han radicado demanda de daños y perjuicios contra la Central Lafayette. Después de un juicio en los méritos,

la corte de distrito dictó sentencia a favor de la demandada. Los demandantes han apelado.

 Alegan los apelantes que la corte inferior cometió error al rehusar aplicar a los hechos de este caso la doctrina del peligro atrayente. Esta doctrina exige a los propietarios que tomen precauciones afirmativas para proteger a los niños que, si bien son transgresores, no se dan cuenta del peligro a que se exponen. Pero contraria a esta doctrina, está la política de no intervenir indebidamente o imponer restricciones gravosas e irrazonables al uso de la propiedad. Por tanto, tenemos el interés de la comunidad en preservar la seguridad de sus niños frente al legítimo interés de los propietarios de usar sus propiedades con razonable libertad. El esfuerzo para determinar cuál de estas dos consideraciones rivales debe prevalecer en determinado caso ha dado lugar a un considerable número de litigios. Anotaciones, 36 A.L.R. 34; 39 A.L.R. 486; 45 A.L.R. 982; 53 A.L.R. 1344; 60 A.L.R. 1444; 145 A.L.R. 322.([1])

El *Restatement, Torts,* sec. 339, pág. 920, sintetiza la doctrina del peligro atrayente, como sigue:

"Un poseedor es responsable de daños corporales recibidos por niños que entran sin permiso en su propiedad, causados por una estructura u otra condición artificial que él mantenga en el terreno, si

"(*a*) el sitio donde se mantiene la condición es uno que le consta al poseedor o que le debe constar que está sujeto a transgresión por los niños; y

"(*b*) la condición es una respecto de la cual el poseedor sabe o debe saber y comprende o debe comprender que envuelve un irrazonable riesgo de muerte o grave daño corporal para tales niños; y

"(*c*) los niños, debido a su edad, no descubren la condición o no comprenden el riesgo envuelto en intervenir con ella o en invadir el área que se tornó peligrosa debido a tal condición; y

---

([1])Véase Hudson, *The Turntable Cases in The Federal Courts,* 36 Harv. L. Rev. 826; Mindel, *The Doctrine of Attractive Nuisances, The Daily Record,* Baltimore, Md., *January* 3, 1936; Green, *Landowner* v. *Intruder; Intruder* v. *Landowner. Basis of Responsibility in Tort,* 21 Mich.L.Rev. 495; Bohlen *The Duty of a Landowner Towards Those Entering His Premises of Their Own Right,* 69 U. of Pa.L.Rev. 142, 237, 340; Note, 86 U. of Pa.L.Rev. 300.

''(d) la utilidad que recibe el dueño proveniente del mantenimiento de tal condición resulta pequeña si se compara con el riesgo que la misma envuelve para los niños.''([2])

La importancia de la doctrina del peligro atrayente es que bajo circunstancias adecuadas mitiga la aplicación a los niños de la regla de que un propietario no tiene deberes legales hacia un transgresor cuya presencia no se anticipa razonablemente, con excepción de abstenerse de causarle daño voluntariamente o tomar las precauciones razonables después de haberse advertido su presencia. *Ramos* v. *Sucesión Serrallés*, 51 D.P.R. 343, 352–3; *Ortiz* v. *American Railroad Co.*, 62 D.P.R. 181, 192-93; *Vega* v. *American Railroad Co.*, 57 D.P.R. 376, 380; *Figueroa* v. *American Railroad Co.*, 64 D. P.R. 335; *Shell Petroleum Corporation* v. *Beers*, 91 P.2d 777 (Okla., 1938); Prosser *on Torts*, Sección 77, pág. 609; Bohlen & Harper, *Torts*, Secciones 88–89, págs. 212–14. Por el contrario, el dueño de una propiedad que está debidamente clasificada como un peligro atrayente debe ejercer mayor cuidado hacia los niños. Esto quiere decir que bajo las condiciones establecidas en la sección 339, un dueño demandado no puede, como en el caso ordinario, simplemente cruzarse de brazos. Bajo estas circunstancias debe tomar razonables pasos afirmativos para evitar que se cause daño a los niños o de lo contrario será responsable de los daños recibidos por

---

([2])Debe notarse que la regla entra en juego no solamente cuando el menor transgrede la finca del demandado si que también como ocurre aquí cuando el niño transgrede un vagón o cualquier otro objeto potencialmente peligroso en una carretera o sitio por donde dicho vagón tiene derecho a pasar, públicos o privados. *Ramos* v. *Sucesión J. Serrallés*, 51 D.P.R. 343; Green, supra, pág. 506, nota 57.

También notamos, si bien en este caso no está envuelto dicho punto, que este Tribunal ha seguido lo que Prosser llama las ''mejores autoridades'' al resolver que no es necesario que el niño sea originalmente atraído por la condición que constituye el peligro; es suficiente que si el demandado hubiera previsto que los niños probablemente entrarían sin permiso y con ello llegarían hasta el sitio del peligro, aun cuando los niños no tuvieran conocimiento de la condición peligrosa y por tanto no fueran atraídos al sitio por dicha condición. *Ramos* v. *Sucesión J. Serrallés*, supra, págs. 354–55; Prosser *on Torts*, Sección 77, pág. 619, y casos allí citados; *Restatement*, Sección 339, comentario sobre la cláusula (a), págs. 920–21.

éstos. No quiere decir esto que la doctrina del peligro atra-
yente convierta al demandado en asegurador de la seguridad
de los niños. Pero bajo ella, está obligado a tomar precau-
ciones para evitar las lesiones, tales como advertirles del
peligro, estacionar guardias para evitar las lesiones, cons-
truir verjas y aparatos de seguridad, etc.; y es el no tomar
tales precauciones afirmativas lo que da lugar a compensa-
ción bajo esta doctrina. Prosser, supra, págs. 621–25; Boh-
len & Harper, supra, secciones 93–94, págs. 219–21.

En el caso que nos ocupa, los demandantes alegan que
un vagón en movimiento cargado de caña tiene un atractivo
peculiar para los niños, quienes sienten la tentación de aga-
rrar un pedazo de caña cuando el vagón va pasando; que
ésta era una costumbre de los niños de esa comarca que era
conocida por la demandada o razonablemente debió haberla
anticipado; que debido a estos hechos, la demandada tenía
la obligación bajo la doctrina del peligro atrayente de tomar
precauciones afirmativas para evitar que los niños tomaran
cañas de sus vagones en movimiento, de suerte que los ni-
ños no corrieran el riesgo de recibir lesiones que ellos no
estaban supuestos a prever; y que la muerte del hijo de los
demandantes fué causada por la negligencia de la demandada
al dejar de tomar dichas precauciones afirmativas, dándole
derecho a los demandantes a recobrar daños por ella.

En apoyo de este argumento, afirman los demandantes
que en el caso de *Ramos* v. *Sucesión J. Serrallés,* supra, re-
solvimos que la demandada era responsable de acuerdo con
la teoría del peligro atrayente, y que los hechos en el pre-
sente caso son suficientemente similares a los del caso de
*Ramos* para exigir el mismo resultado aquí. Por tanto pa-
semos primero a examinar los hechos y el razonamiento de
dicho caso.

En el caso de *Ramos* los empleados de la demandada
transportaban caña en cinco vagones tirados por bueyes.
Los carreteros se vieron obligados a detener los vagones por

hallarse una calesa en medio de la vía. Muchos niños acostumbraban venir a este sitio a coger caña y montarse en los vagones. Uno de los obreros aprovechó esta oportunidad para darle de comer a los bueyes, ayudándole los carreteros. Entonces avisó a los carreteros que reanudaran la marcha. Los vagones se detuvieron inmediatamente de comenzar a moverse al escucharse los gritos de una señora que avisaba que uno de los vagones había arrollado una niña.

Después de citar nuestros casos anteriores sobre peligro atrayente([3]) y de discutir extensamente la doctrina, dijimos a las páginas 358–59:

". . . Aunque técnicamente no pueda considerarse un vagón cargado de cañas como un *attractive nuisance,* la verdad es que no puede negarse que ejerce cierto poder de atracción sobre los niños. . .

"* * * * * * *

"A tenor de la jurisprudencia citada, el grado de responsabilidad o de cuidado que debe ejercer el demandado varía de acuerdo con la utilidad del objeto peligroso. En este caso, es innegable que el uso de los vagones para transportar cañas es de utilidad para la demandada y para la industria a que se dedica. También hay que reconocer que la industria de caña es de utilidad a la comunidad. No es necesario, por lo tanto, esperar de la demandada precauciones extraordinarias, en la hipótesis de que se trate de un *attractive nuisance,* porque esto equivaldría a imponerle una carga excesiva sobre una industria que es socialmente útil; pero creemos firmemente que dicha demandada estaba obligada a adoptar precauciones ordinarias, actuando con el debido cuidado para evitar el accidente. Aunque el objeto peligroso resulte de utilidad, de acuerdo con la jurisprudencia citada, el dueño o poseedor de dicho objeto tiene la obligación de adoptar aquellas medidas que resulten pertinentes para evitar el daño siempre que resulten razonables, que no sean onerosas, y que no destruyan la utilidad del objeto.

"No hay duda de que los vagones, vacíos o cargados de cañas, [ya estén detenidos o en moción],([4]) constituyen una atracción para

---

([3])*Rivera* v. *Porto Rico Drug Co.,* 32 D.P.R. 510; *González* v. *P.R.Ry. Lt. & P. Co.,* 34 D.P.R. 573; *Alvarez* v. *Santa Isabel Sugar Co.,* 37 D.P.R. 105; *Acosta* v. *P.R.Ry.Lt. & P. Co.,* 37 D.P.R. 414; *Berríos* v. *Garáu,* 46 D.P.R. 799.

([4])La frase entre corchetes aparece en el texto en español de la opinión publicada en 51 D.P.R. 343, 359. Por una inadvertencia al traducirse la opinión se omitió en el texto inglés dicha frase

los niños. La demandada debió anticipar la presencia de niños en el sitio de peligro y ejercer el debido cuidado para evitar accidentes al ponerse los vagones en moción. En nuestro sentir, la responsabilidad de dicha demandada es manifiesta, tanto si nos atenemos a la teoría del *attractive nuisance,* como si nos basamos en aquellos principios generales que se aplican en casos ordinarios de negligencia. La prueba demuestra que los carreteros que conducían los vagones se encontraban entretenidos dándole comida a los bueyes. Aunque se ha demostrado que en aquel momento no había niños cerca de la vía, la verdad es que en otras ocasiones acostumbraban aproximarse al peligro y que, como ya hemos dicho, la demandada debió haber anticipado la presencia de niños allí. *Denver City Tramway Co.* v. *Nicholas,* 84 P. 813. Los carreteros debieron estar alertas para evitar que alguno de los niños de los vecinos que residían en las casas próximas a la vía se acercasen al sitio de peligro. Si hubieran ejercido alguna vigilancia es de presumirse que hubiesen visto a la niña y evitado el accidente, ocurrido al ponerse los vagones en moción. Esta vigilancia no le ocasionaba gasto alguno a la demandada ni le imponía precauciones irrazonables. *Louisville & N.R. Co.* v. *Steele,* 201 S.W. 43, 44, *et seq.*

"La única precaución que adoptaron los carreteros fué mirar en el momento en que se iniciaba la marcha de los vagones y se montaban en los yugos de los bueyes. Estando como estaban entretenidos en dar alimento a los bueyes, sin ejercer vigilancia alguna para observar a algún niño que pudiera acercarse a la vía, no creemos que hayan adoptado las precauciones razonables que debieron ejercer, y que hubieran, indudablemente, de haber sido ejercitadas, evitado el accidente.

"Todo induce a creer que la niña se coló entre dos vagones y fué atrapada por los mismos al emprender la marcha. Los carreteros no ejercieron el debido cuidado, porque de haber mirado detenidamente y de haberse fijado habrían visto a la niña y se hubiera evitado el accidente."

Si bien el lenguaje arriba copiado en algunos puntos casi parece invocar la doctrina del peligro atrayente, en análisis final el *ratio decidendi* del caso de *Ramos* no fué que un vagón cargado de caña ya estuviera estacionado o en movimiento, fuera un peligro atrayente *per se,* sino que bajo las circunstancias de este caso específico el accidente se debió a negligencia corriente de los empleados de la demandada que

hubieran podido evitarlo si hubieran mirado cuidadosamente alrededor de los vagones para cerciorarse de que no había niños allí, antes de emprender nuevamente la marcha después de detenerla en un sitio donde ellos sabían que los niños acostumbraban acudir a coger caña, a agarrar caña de los vagones o a montarse en los mismos. Luego en *Vega* v. *American Railroad,* supra, págs. 381–83, hicimos más claro que la responsabilidad de la demandada en el caso de *Ramos* se fundó en negligencia corriente, más bien que en la doctrina de peligro atrayente.[4a]

Pero aun si hubiéramos aplicado la doctrina de peligro atrayente en el caso de *Ramos,* no surge que debemos aplicarla aquí. La diferencia estriba en que en el caso de *Ramos* el vagón de caña estaba estacionado, mientras que aquí era arrastrado por una locomotora que se movía a razón de cinco o seis millas por hora. Suponemos *arguendo* que un vagón de caña que está estacionado atraerá a un niño que desea obtener un pedazo de caña y que éste no se daría cuenta del peligro si el vagón empezara a moverse mientras todavía trata de agarrar la caña. Pero a pesar del hecho de que también un niño podría ser atraído por la posibilidad de coger un pedazo de caña de un vagón en movimiento, puede razonablemente esperarse de un niño como el del caso de autos, que tiene suficiente edad para andar solo y con inteligencia común, que se dé cuenta del riesgo que existe en tratar de coger un pedazo de caña de un vehículo en movimiento.

Una vez que aceptemos la premisa de que un niño corriente se daría cuenta del peligro que existe en tratar de extraer un pedazo de caña de un vagón en movimiento, no puede invocarse en su beneficio la doctrina del peligro atrayente cuando es lesionado al intentarlo. Bajo dichas cir-

---

[4a] El Juez Asociado Sr. Todd, Jr., no está conforme con este análisis de la opinión del caso de *Ramos*. Su criterio es que el Tribunal basó su decisión en dicho caso tanto en la doctrina de peligro atrayente como en la de negligencia ordinaria. En cuanto al resto de esta opinión, dicho Juez está enteramente de acuerdo.

cunstancias, no concurren aquí los requisitos establecidos en los incisos (a) y (c) de la sección 339 para que constituya un peligro atrayente. Según dice el *Restatement* al comenzar el inciso (a) a la página 922, esta doctrina "no se extiende a aquellas condiciones la existencia de las cuales es obvia aun para los niños y cuyo riesgo se comprende totalmente por ellos." De la misma manera, el Restatement, comentando el inciso (c), dice lo siguiente:

" . . . Esto no le exige que mantenga su propiedad libre de las condiciones que aun los niños pequeños están supuestos a observar y a comprender todo el riesgo envuelto en las mismas. El propósito del deber es proteger a los niños de los peligros que ellos no están supuestos a comprender y no a protegerlos contra daños provenientes de su propio descuido en casos en que conocen el peligro. Por tanto, aun cuando la condición sea que el poseedor deba comprender que es una condición respecto de la cual los niños no están supuestos a comprender todo el peligro a que se exponen interviniendo con la misma o bregando con ella, el poseedor no es responsable hacia un menor que de hecho descubra la condición y se dé cuenta de todo el riesgo envuelto en ella, pero eso no obstante decida bregar con la misma por descuido o baladronada."[5]

La conclusión que hemos expuesto está sostenida por la jurisprudencia. Se ha resuelto casi unánimemente que vehículos en movimiento, si bien tentando a los niños a montarse en ellos, no constituyen peligros atrayentes y por tanto sus chóferes no están obligados a tomar precauciones extraordinarias contempladas por dicha doctrina—tales como estacionar un guardia para evitar que se monten los niños— al compararse con el cuidado debido en los casos de negligencia ordinaria, aun si tienen conocimiento de la costumbre de los niños de montarse y tirarse de tales vehículos en movimiento. *Catlett* v. *St. Louis, I. M. & S. Ry. Co.*, 21 S. W.

[5] Eldredge, *Tort Liability to Trespassers*, 12 Temple Law Q. 32, reeditado en 1 Harper, *Readings in Torts*, 553, 575, expresa la misma idea, afirmando que la doctrina del peligro atrayente "tiene la intención de proteger 'a los niños' de peligros graves no comprendidos por ellos. No crea un deber hacia el niño descuidado que, dándose cabal cuenta del peligro, temerariamente lo afronta con espíritu de baladronada."

1062 (Ark., 1893); *Swartwood's Guardian* v. *Louisville &
N. R. Co.*, 111 S. W. 305 (Ky., 1908); *Underwood* v. *Western & A. R. Co.*, 31 S. E. 123 (Ga., 1898); *Allred* v. *Pioneer
Truck Co.*, 176 P. 455 (Calif., 1918); *Zigman* v. *Beebe & Runyan Furniture Co.*, 151 N. W. 166 (Neb., 1915); *Routt* v.
*Look*, 191 N. W. 557 (Wis., 1923); *Kaproli* v. *Central R. of
New Jersey*, 143 A. 343 (N. J., 1928); *Louisville & N. R.
Co.* v. *Bennett's Adm'r*, 269 S. W. 549; casos anotados en
36 A.L.R. 34, 217–21, 284; Prosser, supra, págs. 622, 624.
Pero cf. *Vest* v. *Chesapeqke & O. Ry. Co.*, 187 S. E. 358 (W.
Va., 1936), comentado en 46 Yale L. J. 1082. Adoptamos
dicha doctrina en esta jurisdicción cuando rehusamos aplicar
la de peligro atrayente para exigirle responsabilidad a una
compañía de tranvías por lesiones recibidas por un niño que
se montó en uno de sus tranvías para dar un paseo, a pesar
del hecho de que esta costumbre era bien conocida por la
demandada. *Bernard* v. *P. R. Ry. Lt. & P. Co.*, 60 D.P.R.
218.([6])

En síntesis, en vista del requisito del inciso (*c*) de la sección 339 del Restatement al efecto de que para que exista
un peligro atrayente el niño no debe comprender el riesgo
envuelto en bregar con el objeto en cuestión, un vehículo en
movimiento no es un peligro atrayente, precisamente porque
se admite generalmente que el elemento de movimiento le
imparte a tales vehículos un peligro cuya existencia es obvia a los niños aun para los más jóvenes. Y el deber de
vigilar por la seguridad de un niño transgresor termina

---

([6])Una buena exposición de esta doctrina se encuentra en *Wilson* v. *Atchison,
T. & S.F.Ry. Co.*, 71 P. 282, 283 (Kans., 1903): " . . . el peligro de montar
y bajar de los trenes en movimiento se comprende tan bien, y la tarea de
evitar que los niños se monten o brinquen sobre los vagones que se mueven
lentamente a través de las ciudades o estaciones es tan impráctica y pesada,
que hace inaplicable la regla invocada [peligro atrayente]. El cuidar los trenes
a fin de que los niños estén completamente alejados de los mismos requeriría
un sinnúmero de empleados y establecería una norma de responsabilidad que
nunca ha recibido sanción en este Estado. Tal norma de deber y responsabilidad no puede inventarse y aplicarse por la corte sin legislación . . . . " (El
corchete es nuestro).

donde empieza la capacidad del niño para comprender y evitar el peligro.

■ Además, como ya hicimos constar claramente en el caso de *Ramos* el requisito de la cláusula (*d*) no se cumple aquí: La utilidad social de permitir que los vehículos se muevan libremente sobrepasa por mucho el riesgo esporádico de un niño que trata de abordar o intervenir de algún otro modo con un vehículo en movimiento. El exigir, como sugieren los demandantes, que se estacionen hombres en los dos lados de la vía dondequiera que los vagones de caña reducen la velocidad a cinco millas por hora, con el fin de evitar que los niños se roben la caña o se monten en los vagones, sería exigir una excesiva medida de precaución que nunca ha sido impuesta por corte alguna sobre un demandado, con el fin de proteger a los niños que se proponen asumir un riesgo que aun un niño de inteligencia corriente debe comprender es peligroso. En verdad, para asegurar la absoluta protección de los niños que pudieran ser atraídos por vehículos en movimiento, requeriría aún la mayor precaución de poner guardias al frente y detrás de cada vehículo. Pero tildar de negligencia la omisión de poner tales guardias en un vehículo en movimiento y con ello hacer responsable a los dueños de automóviles por los accidentes que ocurren ocasionalmente cuando no se impide a los niños abordarlos o bregar de algún otro modo con vehículos en movimiento, equivaldría a decir que es más importante el que nunca se debe lesionar un niño que el que la comunidad tenga el beneficio de transportación moderna. No podemos dar ese paso atrás. Hemos indicado en otra ocasión la posibilidad de que la Legislatura pueda algún día creer aconsejable como una forma de seguro social, el proveer compensación sin referencia a quién tiene la culpa. *Matos* v. *Pabón*, 63 D.P.R. 890, 901. Pero hasta que dicho día llegue, bajo la actual doctrina de responsabilidad solamente en caso de negligencia, no podemos echar sobre los hombros del dueño de un vehículo una

carga que en efecto práctico anularía el derecho a usar su vehículo de manera razonable.([7])

Nos damos-cuenta de que el presente caso no es idéntico al caso típico en que el niño claramente comprende el riesgo que asume al montarse para dar un paseo en un vehículo que se mueve rápidamente y que se dedica a la transportación urbana. *Bernard* v. *P. R. Ry. Lt. & P. Co.*, supra. Aquí los vagones de caña subían una pendiente y se movían relativamente despacio; eran de endeble construcción y de fácil acceso; discurrían a través de una zona rural; y el niño solamente quería coger un pedazo de caña, no trataba de subirse para dar un paseo. Reconocemos que bajo estas circunstancias un niño no se percataría del peligro inherente a su conducta de manera tan fácil como el bribonzuelo urbano que da su paseíto en un tranvía o en un tren. Pero ésta es una cuestión de grado. Estamos preparados para convenir que el caso de *Bernard* y casos similares envolvían riesgos que eran mayores y más patentes que aquéllos asumidos por el niño de este caso. Sin embargo, estamos constreñidos a resolver que, si bien en grado menor, el niño en este caso no obstante se percató o debió haber anticipado razonablemente el riesgo que corría, sec. 339, inciso (c) del Restatement; y que aquí, como en aquellos casos, la utilidad social de transportación moderna sobrepasa la conveniencia de precauciones extremas que impedirían la transportación, inciso (d).([8])

Sólo resta examinar algunos de nuestros propios casos. En *Alvarez* v. *Santa Isabel Sugar Co.*, 37 D.P.R. 105, resol-

---

([7])Para que no se nos entienda mal, hacemos constar que al resolver que un vehículo ordinario en movimiento no debe clasificarse como peligro atrayente, no debe interpretarse como que también resolvemos que una maquinaria en movimiento, que es particularmente tentadora y peligrosa para los niños, de igual modo no está gobernada por la doctrina del peligro atrayente. Véase *Berg* v. *B.B. Fuel Co.*, 142 N.W. 321 (Minn., 1913).

([8])La prueba fué contradictoria en cuanto a si los niños acostumbraban coger caña de los vagones en movimiento perteneciente a la demandada, para chuparla y extraerle el guarapo que ésta contenía. Y la corte inferior no resolvió este conflicto. Sin embargo, suponemos que tales episodios ocurrieron

vimos que vagones en movimiento, cargados con caña, al cru-
zar un camino público en un sitio en que hay considerable
tránsito y un vecindario densamente poblado no constituye
un peligro atrayente para los niños. Es cierto que aparen-
temente no había alegaciones en la demanda al efecto de que
(1) el propósito para el cual el niño trataba de abordar el
vagón era el de obtener un pedazo de caña y (2) que la de-
mandada sabía o debió haber sabido que los niños acostum-
braban abordar sus vagones mientras éstos se movían. Pero
los amplios términos de nuestra opinión, confirmando una
sentencia a favor de la demandada concedida en excepción
previa, hacen ver con razonable claridad que esta Corte, en
vista de las consideraciones aquí expresadas, no estaba dis-
puesta a caracterizar un vagón en movimiento cargado de
caña como un peligro atrayente.

El demandante descansa en *Vega* v. *American R. R. Co.
of P. R.,* supra. Pero como hemos visto, lo mismo que en
el caso de *Ramos,* el caso de *Vega* descarta la doctrina del
peligro atrayente y basa su sentencia a favor de la deman-
dante en la teoría de que la demandada fué negligente al
operar en reversa un automóvil de vía sin tener una persona
que le indicase al conductor la presencia en la vía de alguna
persona extraña. Por tanto nada hay en dicho caso contra-
rio a nuestras conclusiones en éste. De la misma manera,
*Figueroa* v. *American R. R. Co. of P. R.,* supra, *Hernández*
v. *Acosta,* 64 D.P.R. 171, y *Ortiz* v. *American R. R. Co.,* su-
pra, fueron resueltos a base de negligencia ordinaria. La
teoría de peligro atrayente no jugó papel alguno en dichas
decisiones y las opiniones no la discuten. Si bien es cierto
que, al resolver el caso de *Hernández,* descansamos en la
doctrina familiar de que la norma de conducta que debe se-

frecuentemente y que la demandada por tanto debió haber anticipado razonable-
mente que ocurrirían aquí. Sin embargo, por los motivos ya expuestos, la de-
mandada estaba justificada, lo mismo que en el caso de *Bernard,* en no tomar
las precauciones afirmativas que se hubieran exigido de aplicarse la doctrina de
peligro atrayente.

guir un niño es aquélla que debe esperarse de un niño de igual edad, inteligencia y experiencia, dicho concepto no tiene relación alguna con la doctrina de peligro atrayente.

*La sentencia de la corte de distrito será confirmada.*