DOMINGA TORRES, asistida de su esposo TOMÁS SANTANA, demandante y apelante, *v.* WIRSHING & CÍA., S. EN C., y U. S. FIDELITY & GUARANTY CO., demandados y apelados.

Número 11384.
*Sometido:* 1 de febrero de 1955. *Resuelto:* 6 de septiembre de 1955.

646

*Rafael Muñoz Ramos* e *Inés Acevedo de Campos,* abogados de la apelante; *Enrique Báez García,* abogado de los apelados.

EL JUEZ PRESIDENTE SEÑOR SNYDER emitió la opinión del Tribunal.

Dominga Torres, asistida de su esposo Tomás Santana, instó demanda ante el Tribunal Superior contra Wirshing & Cía., S. en C. y la U. S. Fidelity & Guaranty Co., en reclamación de daños y perjuicios a consecuencia de la muerte de Inés Laboy Torres, hija de Dominga Torres e hijastra de Tomás Santana. Celebrado el juicio en los méritos, el Tribunal Superior dictó sentencia a favor de los demandados, contra la cual la demandante ha apelado.

No existe controversia en cuanto a los hechos. A la fecha del accidente, Wirshing & Cía. explotaba varias fincas de

cañas de azúcar que formaban la Colonia Restaurada, exis-
tiendo en ésta diversas casas para sus empleados. La deman-
dante vivía en una de estas casas en compañía de sus hijos,
entre los cuales estaba Inés.

Como a las 2:30 de la tarde del 11 de junio de 1951 Heri-
berto Ortiz, empleado por Wirshing & Cía. para que cortara
yerba y la llevara en un carro de bueyes a un corral de su
propiedad donde se tenía a los bueyes, desunció la yunta que
arrastraba el carro y dejó éste estacionado en el sitio acos-
tumbrado fuera del corral. El carro de bueyes tiene dos
ruedas y un pértigo largo. Al final del pértigo está el yugo
que encaja en la cabeza de los bueyes. Cuando el carro está
estacionado sin bueyes se fija un pedazo de madera a la tierra
a fin de descansar el pértigo sobre éste. El peso de la carga
del carro se sostiene por este pedazo de madera que se une
al pértigo con una argolla. El pedazo de madera se conoce
con el nombre de "el niño". Cuando se va a usar el carro
se hala el "niño" a su sitio con una soga corta.

Ortiz declaró que su patrono le ordenó que descansara el
pértigo del carro sobre el piso cuando desenyugara los bueyes,
y que así lo había hecho el día del accidente. Sin embargo,
el Tribunal Superior resolvió que el día en cuestión el carro
estaba en el sitio de costumbre con el pértigo en posición hori-
zontal, sostenido por "el niño".(¹) Toda vez que el carro no
tenía carga en ese momento, no había peso que presionara al
"niño" contra el suelo.

El carro estaba estacionado cerca de una pluma de agua
pública que era usada por los empleados de Wirshing & Cía.
que vivían en las casas radicadas en la Colonia Restaurada.
Como a las 4:00 ó 5:00 de la tarde del día del accidente, Inés,

---

(¹) Por motivos que indicaremos más adelante, suponemos que Ortiz dejó
el pértigo sostenido en esta forma en vez de descansarlo en el suelo. El
único fin en dejarlo así hubiera sido que para Ortiz fuera más fácil al día
siguiente enyugar los bueyes al carro sin tener que molestarse en alzar el
pértigo. La prueba fué al efecto de que el alzarlo era muy pesado para un
niño pero no para un hombre. De cualquier modo, como ya se ha indicado,
suponemos que Ortiz dejó el pértigo sostenido en posición horizontal.

que tenía 11 años y dos meses de edad, fué con un cubo a la pluma en busca de un poco de agua. Iba acompañada de tres amiguitas, que tenían de 11 a 12 años de edad. Mientras estaban en la pluma, Inés retó a las otras niñas a ver quién llegaba primero al carro. Cuando se alineaban, Inés comenzó a correr ante de darse la señal de partida. El accidente ocurrió después de haber Inés llegado al carro. La prueba de cómo ocurrió el accidente exactamente no es lo clara que pudo ser. Sin embargo, ninguna de las partes cuestiona la conclusión del tribunal sentenciador al efecto de que cuando Inés llegó al carro, ". . . se recostó sobre ella, y con la presión de su cuerpo sobre la flecha hizo caer súbitamente el sostén de la flecha ('el niño'), cayendo ella debajo de la flecha, fracturándole ésta el cráneo, a consecuencia de lo cual falleció en el mismo día." (²)

La demandante sostiene que el tribunal sentenciador cometió error al resolver que el carro de bueyes no era un peligro atrayente y que el accidente no se debió a la negligencia del patrono demandado.

El tribunal sentenciador resolvió que los niños que ·vivían en la Colonia Restaurada estaban acostumbrados a montarse en estos carros de bueyes y a jugar en ellos. Si, como hemos supuesto, Ortiz dejó el carro con el pértigo puesto en posición horizontal y sostenido por el "niño", un menor que salte y juegue dentro del carro podría desconocer el peligro existente y resultar lesionado. Bajo estas circunstancias, quizás las demandadas serían responsables bajo la doctrina del peligro atrayente. *Díaz* v. *Central Lafayette*, 66 D.P.R. 827, y casos citados; *Restatement, Torts*, sec. 339.

---

(²) La única prueba en cuanto a cómo ocurrió el accidente fué la suministrada por Gladys Esther Torres, de 12 años de edad, quien acompañó a Inés a la pluma. Dijo ella que ". . . cuando se pegó del carro, que el niño se cayó, ella cayó al otro lado . . . y el niño le cayó encima."

Esto es muy diferente de la alegación hallada en la demanda al efecto de que Inés podía haber usado el pértigo como trapecio. Y, como se ha dicho en la opinión, el accidente ocurrió en forma tal que no tenía relación con el peligro envuelto en la costumbre de los niños de brincar y jugar· dentro del carro cuando éste tuviera el pértigo en posición horizontal.

Sin embargo, aquí el accidente no ocurrió porque las niñas estuvieran brincando en un carro que en virtud de su inestabilidad era potencialmente peligroso para dichos fines. El carro era meramente la meta de una carrera. Como tal meta, no tenía para las niñas atracción alguna que tuviera relación con su peligro potencial. Aun cuando supusiéramos que el carro era un peligro atrayente que representara peligro potencial para las niñas que les indujese a brincar y jugar dentro del carro, no podemos ampliar esta doctrina para que fuera aplicable al hecho no relacionado de usar el carro como meta para una carrera a pie, seguido de un accidente que no se probó ocurriera debido a la naturaleza atrayente y peligrosa del carro. Véase *Bonilla* v. *Loíza Sugar Co.*, 67 D.P.R. 385, 388–9.

El resultado a que hemos llegado hace innecesario que determinemos si adoptaríamos "la regla del sitio de juego" (*the playground rule*) en esta jurisdicción. *Cf. Gatlinburg Const. Co.* v. *McKinney*, 263 S.W.2d 765 (Tenn., 1953); *Williams* v. *Town of Morristown*, 222 S.W.2d 607 (Tenn., 1949); *Hogan* v. *Etna Concrete Block Co.*, 188 Atl. 763 (Pa., 1937); *Fitzpatrick* v. *Penfield*, 109 Atl. 653 (Pa., 1920); *McGill* v. *United States*, 200 F.2d 873 (C. A. 3, 1953); *James, Inroads on Old Tort Concepts*, 14 NACCA L. J. 226, 229–30; 14 *id.* 285; 65 C.J.S. sec. 40, págs. 505–7.

Una vez eliminada de este caso la cuestión del peligro atrayente, no encontramos acto alguno de negligencia atribuíble al patrono demandado en el cual podamos basar una sentencia a favor de la demandante.

*La sentencia del Tribunal Superior será confirmada.*

Los Jueces Asociados Sres. Negrón Fernández y Belaval disintieron.