CAYETANO c/p SANTANA VARGAS RODRÍGUEZ Y SU ESPOSA AURELIA VIENTOS ROMÁN, demandantes y recurridos, *v.* AUTORIDAD DE LAS FUENTES FLUVIALES DE PUERTO RICO, demandada y recurrente.

*Número:* 154    *Resuelto:* 28 de septiembre de 1962

*José Vila Ruiz, José Antonio Arabia, José A. García Malpica* y *C. Díaz Lamoutte* abogados de la recurrente; *José Veray, Jr.,* y *Pablo R. Cancio,* abogados de los recurridos.

Sala integrada por el Juez Presidente Señor Negrón Fernández y los Jueces Asociados Señores Blanco Lugo y Dávila.

EL JUEZ ASOCIADO SEÑOR DÁVILA emitió la opinión del Tribunal.

Un niño de tres años y cinco meses pereció ahogado en un canal de riego. "Este canal se origina en la central eléctrica de Isabela y tiene ocho kilómetros de largo terminando en el lago número dos. Tiene 17 pies de ancho y 7 pies de fondo, y su apariencia es la de un río con agua a velocidad de 2 pies por segundo, que equivale a 1.30 millas por hora. El mismo no está cercado, ni tiene rótulos avisando el peligro que constituye el acercarse a él y desde el año 1955 es administrado por la Autoridad de las Fuentes Fluviales de Puerto Rico, y usado por ésta para producir energía eléctrica que vende la Autoridad demandada y es un hecho además aceptado el que este canal pertenece y forma parte del Servicio de Riego de Isabela, propiedad del Estado Libre Asociado de Puerto Rico, y cuyo canal administra la Autoridad de las Fuentes Fluviales de Puerto Rico, desde el año 1955."(1)

El tribunal de instancia declaró con lugar la demanda radicada por los padres del menor contra la Autoridad de las Fuentes Fluviales para resarcirse de los daños sufridos con motivo de la muerte de su hijo. Acordamos revisar la sentencia dictada.

Fundamenta el tribunal de instancia la responsabilidad impuesta a la recurrente en el hecho de que el canal constituye un peligro atrayente para los niños y que era obligación de la Autoridad demandada, por constituir dicho canal un sitio de verdadera peligrosidad para los niños "tener el mismo provisto de verjas, rótulos, avisos o señales, o bajo la vigilancia de algún guardián o celador".

*Ramos* v. *Sucn. Serrallés*, 51 D.P.R. 343 (1937) ratifica la aplicabilidad en esta jurisdicción de la doctrina del peligro atrayente. *Sioux City & Pacific R. Co.* v. *Stout*, 84 U.S. 657 (1873). En *Díaz* v. *Central Lafayette*, 66 D.P.R. 827

---

(1) Quinta determinación de hecho del juez sentenciador.

(1947) expusimos los requisitos esenciales para que sea aplicable adoptando los que expone la sección 339 del *Restatement* sobre *Torts:*([2])

"Un poseedor es responsable de daños personales([3]) recibidos por niños que entran sin permiso en su propiedad, causados por una estructura u otra condición artificial([4]) que él mantenga en el terreno, si

'(a) el sitio donde se mantiene la condición es uno que le consta al poseedor o que le debe constar que está sujeto a transgresión por los niños; y

'(b) la condición es una respecto de la cual el poseedor sabe o debe saber y comprende o debe comprender que envuelve un irrazonable riesgo de muerte o grave daño corporal para tales niños; y

'(c) los niños, debido a su edad, no descubren la condición o no comprenden el riesgo envuelto en intervenir con ella o en invadir el área que se tornó peligrosa debido a tal condición; y

'(d) la utilidad que recibe el dueño proveniente del mantenimiento de tal condición resulta pequeño si se compara con el riesgo que la misma envuelve para los niños."

Establecido que en esta jurisdicción impera la doctrina que hace responsable a los dueños de fincas de los daños sufridos por niños que penetren en ellas, si median ciertas circunstancias, procede determinar si la situación de hechos que este caso presenta justifica imponer tal responsabilidad. ▪

Aún en las jurisdicciones donde se impone la responsabilidad a que hemos aludido, tiene aceptación general la doctrina que exime de responsabilidad al dueño de bienes

---

([2]) En *Restatement, Torts,* 2d (*Tent Draf. No. 5, April* 1960) se hacen unas enmiendas a la Sección 339, pero no alteran fundamentalmente la versión original. Se añade una cláusula (e) que por inadvertencia se omitió en la versión publicada y que lee así:

"(e) El poseedor omite ejercitar el cuidado razonable para eliminar el peligro o de otra forma proteger los niños."

([3]) Hemos sustituido el vocablo "corporales" por "personales" por ser una traducción más precisa.

([4]) Véase nota que aparece en 2 Okla. L. Rev. pág. 537 sobre la exigencia de que sea una condición artificial.

raíces de los perjuicios sufridos por los niños que puedan frecuentar los cuerpos de agua naturales ubicados en sus fincas. *Schaffer* v. *Claremont Country Club*, 336 P.2d 254 (Calif. 1959). En el caso de *Peters* v. *Bowman*, 47 P. 113 (Calif. 1896) se expuso lo siguiente:

"Un cuerpo de agua—estancada, como en los estanques y lagos; o corriente, como en los ríos y quebradas; o con flujo y reflujo como en las orillas de los mares y bahías—es una cosa natural, común en todos los países que no son desiertos. Tales cuerpos de agua se encuentran en o cerca de casi todos los pueblos y ciudades en este país; el peligro de ahogarse en ellos es un peligro palmariamente evidente cuyo conocimiento es general; y no hay ningún punto de vista, compatible con los derechos reconocidos a todo propietario, que obligue al dueño de un predio en el cual está situado total o parcialmente un cuerpo de agua—ya sea estacionario o en movimiento—a rellenarlo o rodearlo de una pared infranqueable."

Desde su más tierna edad los niños conocen el peligro que representa el agua, el fuego y la altura. 2 Harper and James, *The Law of Torts*, sec. 27.5 pág. 1452 (1956). El comentario (j) a la Sección 339 *Restatement on Torts* 2d, sec. 339 (Tent Draft No. 5, April 1960) expone:

"j. Existen muchos peligros, tales como el fuego, el agua, o caerse desde una altura o dentro de una excavación, los cuales, bajo circunstancias normales, razonablemente se anticipa que sean cabalmente comprendidos y conocidos por cualquier niño que tenga suficiente entendimiento. Bajo tales condiciones, en circunstancias normales, la regla expuesta en esta Sección no es de aplicación, siempre y cuando no exista otro factor que cree un riesgo especial que incite al niño a no evitar el peligro, como el hecho de que la condición está tan oculta que no permita rápidamente reconocerla, o que exista algo que distraiga la atención del niño en tal forma que hace posible que éste no descubra o aprecie dicho peligro."

Como regla general, se ha equiparado con los cuerpos de agua naturales, aquellos artificiales que exhiben las mismas características. ■

En el caso de *Somerfield* v. *Land & Power Co.*, 145 P. 893 (Kan. 1915), se dijo:

"El canal, como puede observarse, tiene las características de una corriente natural de agua y no puede considerarse como un peligro atrayente mayor que un río que discurre a través de la ciudad, o de uno de sus estanques o lagos. Se ha resuelto que un estanque sin protección en el curso de un cuerpo de agua natural al que los niños van a chapotear y nadar, no puede considerarse como un peligro dentro del significado de la doctrina de peligro atrayente. *Tavis* v. *Kansas City*, 89 Kan. 547, 132 Pac. 185. En *Harper* v. *City of Topeka*, 92 Kan. 11, 139 Pac. 1018, 51 L.R.A. (N.S.) 1032, se decidió que un estanque en un parque de la ciudad que sustancialmente era una reproducción de un estanque natural, aunque era atractivo para los niños, no caía dentro de los alcances de la doctrina del peligro atrayente. Si no hay ninguna necesidad de cercar o cubrir una corriente de agua natural, tampoco vemos ninguna necesidad mayor que obligue a levantar una cerca o cubrir un canal, y no vemos mayor distinción entre una situación y la otra desde el punto de vista de la doctrina del peligro atrayente."

Véase además: *Carmichael* v. *Little Rock Housing Authority*, 299 S.W.2d 198 (Ark. 1957); *Villani* v. *Wilmington Housing Authority*, 106 A.2d 211 (Del. 1954); *Lockridge* v. *Standard Oil Co.*, 114 N.E.2d 807 (Ind. 1953); *Hanners* v. *City of Ashland*, 331 S.W.2d 729 (Ky. 1960); *Holland* v. *Vidrine*, 133 So.2d 809 (La. 1961); *Mellas* v. *Lowdermilk*, 271 P.2d 399 (N.M. 1954); *Atchinson T & S F Ry. Co.* v. *Powers*, 243 P.2d 688 (Okl. 1952); *McCleod* v. *Tri-State Milling Co.*, 24 N.W.2d 485 (S.D. 1946); *Meyer* v. *General Electric Co.*, 280 P.2d 257 (Wash. 1955); Nota 9 Texas L. Rev. 618 (1931); Prosser, *Trespassing Children*, 47 Calif. L. Rev. 427 (1959); Anotación 8 A.L.R.2d 1254 (1949). ■

La regla que acabamos de exponer tiene excepciones. Entre otras, está la que le impone responsabilidad al dueño del sitio donde están localizados los cuerpos de agua, si estos presentan o contienen artefactos que los hagan atractivos, *Davies* v. *Land O'Lakes Racing Ass.*, 69 N.W.2d 642

(Minn. 1955), o constituyen una trampa u ofrecen un peligro claro y patente. *Saxton* v. *Plum Orchards*, 40 So.2d 791 (La. 1949). Otra circunstancia a considerarse es la localización; si están cerca de poblados o de carreteras, *Banker* v. *McLaughlin*, 208 S.W.2d 843 (Tex. 1948). Una piscina en un sector poblado, recientemente se consideró que caía dentro de la excepción. *King* v. *Lennen*, 1 Calif. Rptr. 665 (1959); Ver Nota 9 Stan. L. Rev. 204 (1956). También es factor a considerarse si los alrededores del sitio donde está localizado el cuerpo de agua es utilizado por los niños como área recreativa, y el dueño conoce o razonablemente debiera conocer ese hecho. *Altenbach* v. *Lehigh Valley R. Co.*, 37 A.2d 429 (Pa. 1944); *Barlow* v. *Gurney*, 29 S.E.2d 680 (N.C. 1944). Pero véase *Torres* v. *Wirshing & Cía.*, 78 D.P.R. 645 (1955). Sería prácticamente imposible fijar de antemano en qué circunstancias se podría imponer responsabilidad por vía de excepción. Así, cada caso deberá ser considerado y resuelto de acuerdo con los hechos que presente. *Díaz Pérez* v. *Estado Libre Asociado*, Civil Núm. 12274, resuelto el 11 de junio de 1959. Prosser, *Trespassing Children*, supra, a las págs. 460–461.

Teniendo presente lo expuesto procede considerar ahora los hechos que dieron margen a la acción incoada.

El demandante vivía con su familia en una casa cerca del canal de riego donde pereció su hijo. Existían diez o doce casas en ese sitio. En cuanto a la del demandante, la prueba demuestra que fue construida mucho después que el canal. El día de la tragedia el niño que pereció ahogado y tres hermanitos, el mayor de los cuales tenía siete años, estaban jugando en el batey de su casa. En la casa se encontraban planchando dos hermanas de más edad. El canal tiene la apariencia de un río caudaloso. En sus márgenes hay vegetación. En ese sitio el canal no tiene estructuras ni cosas ocultas que constituyan una trampa. Es simple y llanamente agua discurriendo por un cauce fabricado por el hombre. No hay prueba de que en las orillas

del canal jugaran habitualmente los niños ni de que la Autoridad tuviera conocimiento de ese hecho. Además sería poco menos que imposible cercar todo el sistema de canales o mantener una vigilancia continua para evitar accidentes como el del caso de autos. ■

Así, es inescapable la conclusión de que a base de los hechos que aquí consideramos no procede imponerle responsabilidades a la demandada, bien sea porque apliquemos la regla de que no constituyen peligro atrayente los cuerpos de agua naturales o aquellos artificiales que se les asemejen o porque no concurren las condiciones establecidas en la Sección 339 del *Restatement* sobre *Torts* y que adoptamos en el caso de *Díaz* v. *Central Lafayette*, supra. Claramente no concurren la (b) y la (d). Innecesario es considerar si están presentes las otras. La (b) no concurre, porque estableciendo la prueba que el canal es como un río, el mantenerlo en las condiciones en que es mantenido el de autos, **no envuelve un riesgo irrazonable para los dueños.** Tampoco concurre la (d) ya que es de enorme utilidad para toda una región del país mantener el riego, y el riesgo de que perezcan niños en el canal resulta pequeño, dado el hecho que desde tierna edad éstos están conscientes del peligro que entraña el agua.

*Procede, por tanto, revocar la sentencia recurrida que dictó el Tribunal Superior, Sala de Aguadilla, con fecha 15 de abril de 1959.*