Luis Pérez Vázquez, etc., et al., demandantes y recurrentes, *v.* Sucesión de Juan Amill Rodríguez et al., demandados y recurridos.

*Número:* R-62-9        *Resuelto:* 28 de octubre de 1963

*H. Lugo Bougal* y *Carlos Irizarry Yunqué,* abogados de los recurrentes; *José N. Dapena Laguna* y *Charles Cuprill,* abogados de los recurridos.

Sala integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Rigau y Dávila.

EL JUEZ ASOCIADO SEÑOR RIGAU emitió la opinión del Tribunal.

Sólo en un punto sustancial hay conflicto en la prueba y lo señalaremos oportunamente. La finca de los demandados se dedica, en parte, al cultivo de caña de azúcar. Éstos, como elemento incidental a su empresa agrícola, operan, en la época de recolección de la caña, una grúa que se utiliza para trasbordar caña de los carros de bueyes, que la traen de la pieza, a los camiones, que la llevan a la central. El día de los hechos, como a medio día, se terminó la recolección de la caña en la pieza de los demandados, que queda cerca de la carretera de Yauco a Lares y después de almuerzo los empleados de los demandados se dispusieron a desmontar la grúa para llevarla a otro lugar. Uno de dichos empleados era Alfredo Pacheco, a quien el niño Andrés Pérez, de ocho años, le llevaba el almuerzo a su trabajo. El menor Andrés y su familia viven, o vivían para esa fecha, cerca de Alfredo Pacheco. Luego de almorzar en su casa, el niño iba a casa de Pacheco, en donde la señora de éste le entregaba la fiambrera con el almuerzo y Andrés se la llevaba a Pacheco al trabajo. Éste le pagaba diez centavos diarios al niño por ese servicio.

El día a que hemos hecho referencia Andrés, acompañado de su hermanito Luis de 12 años, le trajo el almuerzo a Pacheco. Pacheco y los otros obreros que allí estaban trabajando, al sonar el pito de medio día que en esa vecindad hace sonar una planta de la Autoridad de las Fuentes Fluviales, salieron de la pieza y se fueron a la carretera cercana, en donde, a su orilla y a la sombra de los árboles, almorzaron. A la hora de recomenzar las labores los obreros se volvieron a los terrenos de los demandados y, como dijimos, se dispusieron a desmontar la grúa. Aquí llegamos al conflicto en la prueba. Declara Pacheco que al ver que los niños Andrés y Luis iban a entrar al sitio en donde estaba la grúa, él les dijo que allí había peligro, que los mandó irse de allí, y que ellos se fueron. En igual sentido declaró también el testigo Francisco López Ruiz. Por el contrario Luis, el hermano de Andrés, declaró que luego del almuerzo ellos le llevaron agua a los obreros y

después se fueron a descansar debajo de un carro de hierro, de esos que se utilizan para cargar caña, que allí cerca de la grúa estaba. Según la versión a la cual le dio crédito el tribunal de instancia Pacheco ordenó a los niños a retirarse de aquel sitio por ser peligroso y éstos se fueron, pero mientras los obreros trabajaban en el desmonte de la grúa los niños regresaron sin ser vistos y se colocaron debajo del carro de hierro que allí había.

Regresando a los hechos no controvertidos, desde debajo del mencionado carro de hierro los niños observaban la operación del desmonte de la grúa. Ya casi terminado el trabajo un cable o viento de los que sujetaban un madero o poste se zafó y se hizo claro que el madero se caería. Los obreros dieron la voz de alarma para que todos se protegiesen. Los niños en vez de quedarse debajo del carro de hierro, en donde estaban protegidos y seguros, echaron a correr y el poste al caerse alcanzó al niño Andrés dándole en la cabeza, matándolo. Tan pronto el niño cayó Alfredo Pacheco se lo echó al hombro, corrió hacia la carretera, detuvo el primer vehículo que pasó y lo llevó al Hospital Municipal. Desgraciadamente el golpe había sido fatal.

Los demandantes son los padres y siete hermanos del menor Andrés Pérez. Solicitan compensaciones de $50,000.00 los padres y los hermanos tres partidas de $20,000.00, dos de $10,000.00 y dos de $5,000.00 haciendo un total de $140,000.00. El Tribunal Superior, Sala de Ponce, luego de hacer las pertinentes conclusiones de hecho y de derecho declaró sin lugar la demanda, con costas e impuso a los demandantes $1,000.00 de honorarios de abogado. Los demandantes recurrentes señalan tres errores. Los primeros dos impugnan la apreciación de la prueba que hizo el Tribunal Superior y el tercero impugna la condena al pago de honorarios de abogado.

■ En su oportunidad expedimos el auto de revisión y hemos examinado cuidadosamente la transcripción de evi-

dencia y le hemos dado la debida atención a los alegatos de las partes. La prueba es clara y salvo lo que antes señalamos no hay conflicto de importancia en ella. En cuanto a si los niños se quedaron en el lugar en donde los obreros desmontaban la grúa, con el beneplácito de éstos o, si por el contrario, fueron echados de aquel sitio y luego regresaron sin ser vistos y contra las instrucciones que recibieron, el tribunal de instancia dirimió el conflicto. Ambas versiones son completamente verosímiles y estando la determinación que hizo el tribunal a quo sostenida por la prueba y no surgiendo del récord que dicha determinación sea claramente errónea, no la alteraremos. Regla 43.1 de las de Procedimiento Civil; *Sánchez* v. *Soler Fajardo*, 87 D.P.R. 432 (1963).

■ Argumentan los demandantes en su alegato que aun considerados los niños como transgresores (*trespassers*), como tenemos que considerarlos a la luz de la prueba creída por el tribunal a quo y aceptada por nosotros, sería de aplicación la doctrina del peligro atrayente (*attractive nuisance*). Como se sabe, la regla general es al efecto de que un propietario no tiene deberes legales hacia un transgresor cuya presencia no se anticipa razonablemente, con excepción de abstenerse de causarle daño voluntariamente o tomar las precauciones razonables después de haberse advertido su presencia. *Díaz* v. *Central Lafayette*, 66 D.P.R. 827, 830 (1947); *Ramos* v. *Sucn. Serrallés*, 51 D.P.R. 343, 352–3 (1937); *Restatement, Torts*, sec. 333, pág. 901; Prosser, *On Torts*, 2da. ed., sec. 76, pág. 432 y ss. En cuanto a niños de corta edad, los tribunales que han adoptado la doctrina de peligro atrayente han decidido que cuando una persona crea en su propiedad, o en la de otro, o en un sitio público, una condición peligrosa capaz de atraer niños de tierna edad, esa persona está obligada a tomar aquellas precauciones que razonablemente aconseja la prudencia para evitar daño a los niños que acudan o puedan acudir al sitio de peligro. *Ramos* v. *Sucn. Serrallés*, supra, pág. 346. Esta doctrina mitiga la aplicación

de la regla general sobre transgresores antes expuesta, en atención a que los niños de corta edad generalmente no se percatan de los peligros que les rodean. En *Rivera* v. *P.R. Drug Co.*, 32 D.P.R. 510 (1923) aceptamos dicha doctrina en esta jurisdicción y ratificamos dicha aceptación en *Ramos* v. *Sucn. Serrallés*, supra. Como dijimos en *Díaz* v. *Central Lafayette*, supra, pág. 829, la doctrina de peligro atrayente "exige a los propietarios que tomen precauciones afirmativas para proteger a los niños que, si bien son transgresores, no se dan cuenta del peligro a que se exponen. Pero contraria a esta doctrina, está la política de no intervenir indebidamente o imponer restricciones gravosas e irrazonables al uso de la propiedad. Por tanto tenemos el interés de la comunidad en preservar la seguridad de sus niños frente al legítimo interés de los propietarios de usar sus propiedades con razonable libertad. El esfuerzo para determinar cuál de estas dos consideraciones rivales debe prevalecer en determinado caso ha dado lugar a un considerable número de litigios."

En *Díaz* v. *Central Lafayette*, supra, y en *Vargas Rodríguez* v. *Fuentes Fluviales*, 86 D.P.R. 164 (1962), expusimos los requisitos esenciales para que sea aplicable dicha doctrina adoptando los que expone el *Restatement, Torts*, en su sec. 339, pág. 920. Siendo breves dichos requisitos preferimos citarlos, en aras de la precisión, en vez de parafrasearlos:

"Un poseedor es responsable de daños corporales recibidos por niños que entran sin permiso en su propiedad, causados por una estructura u otra condición artificial que él mantenga en el terreno, si

'(a) el sitio donde se mantiene la condición es uno que le consta al poseedor o que le debe constar que está sujeto a transgresión por los niños; y

'(b) la condición es una respecto de la cual el poseedor sabe o debe saber y comprende o debe comprender que envuelve un irrazonable riesgo de muerte o grave daño corporal para tales niños; y

'(c) los niños, debido a su edad, no descubren la condición o no comprenden el riesgo envuelto en intervenir con ella o en invadir el área que se tornó peligrosa debido a tal condición; y '(d) la utilidad que recibe el dueño proveniente del mantenimiento de tal condición resulta pequeña si se compara con el riesgo que la misma envuelve para los niños.' " [1]

En el caso de autos no se dan esas condiciones que harían aplicable la doctrina del peligro atrayente. En primer lugar, no hubo prueba que hiciera al tribunal concluir que el sitio en donde los demandados operaban la grúa es uno que le constaba a los demandados, o que le debía constar, que estaba sujeto a transgresión por los niños. La operación de desmontar la grúa se hacía en ese sitio solamente una o dos veces al año; el sitio no es comunmente transitado por niños; no lo cruza ningún camino y no hay allí cerca viviendas ni escuelas.

En segundo lugar, "la condición" de que se trata, el desmonte de la grúa, por ser esporádico y por no haber razón para creer que habría niños allí al llevarse a cabo no es una que envuelva un riesgo irrazonable para niños. El requisito (c) sí se cumple pues no es de esperarse que un niño de ocho años, como el menor fenecido, comprendiese el riesgo que aquella operación envolvía. Lo mismo, probablemente, no podría decirse de su hermano Luis de 12 años. Naturalmente, esta condición sola, aislada de las demás circunstancias, no basta para hacer responsables a los demandados.

El requisito (d) tampoco se cumple en este caso pues es sabido la utilidad, y más que utilidad la necesidad, que representa para los productores de caña de azúcar utilizar esas grúas. Finalmente, no se probó que los demandados omitieran ejercer el cuidado razonable que la ley les exige. Los emplea-

---

[1] En *Restatement, Torts, Second* (Tent. Draft No. 5, April 8, 1960) se proponen unas enmiendas a esa sección que no alteran en forma importante su significado y se añade la cláusula (e) que por error se omitió en la versión original y que lee así:

"(e) El poseedor omite ejercitar el cuidado razonable para eliminar el peligro o de otra forma proteger los niños."

dos echaron· a los niños del lugar, les advirtieron del peligro; los obreros eran diestros en la labor que llevaban a cabo, la habían ejecutado por varios años, y el equipo era inspeccionado regularmente por inspectores del Fondo del Seguro del Estado. Para casos en los cuales se falló a favor de los demandados porque los niños perjudicados fueron debidamente advertidos del peligro que corrían, véanse *Niernberg* v. *Gavin*, 224 P.2d 215 (1950); *Jarvis* v. *Howard*, 219 S.W.2d 958 (1949); *McCulley* v. *Cherokee Amusement Co.*, 184 S.W.2d 170 (1944); *Schock* v. *Ringling Bros.*, 105 P.2d 838 (1940); *Galbraith-Foxworth Lumber Co.* v. *Gerneth*, 66 S.W.2d 471 (1933); *Hernández* v. *Santiago*, 293 Pac. 875 (1930); *Lucas* v. *Hammond*, 116 So. 536 (1928); *Case Threshing Machine Co.* v. *Burns*, 86 S.W. 65 (1905); *Carey* v. *Kansas City*, 86 S.W. 438 (1905).

■ No habiéndose dado aquí un caso de peligro atrayente, quedaría un caso de responsabilidad por negligencia ordinaria, la cual no fue probada ni creemos que existe. En los casos de responsabilidad hacia transgresores el hecho de que el transgresor sea un niño, es sin duda, uno de los factores que debe tomarse en cuenta al determinar la responsabilidad o ausencia de ella del demandado, pero ese hecho de por sí no conlleva responsabilidad absoluta. Así, por ejemplo, el *Restatement, Torts, Second* (Tent. Draft No. 5) antes citado, al comentar la cláusula (e) de la sec. 339 transcrita en el escolio 1, explica que esa cláusula se incluye para hacer claro que solamente se trata de responsabilidad debido a negligencia, y que el demandado no es responsable si ha sido razonablemente cuidadoso. El mero hecho de que ocurra un accidente no conlleva necesariamente responsabilidad civil. Prosser, *Trespassing Children*, 47 Calif. L. Rev. 427, 432 (1959); Green, *Landowner v. Intruder: Intruder v. Landowner: Basis of Responsibility in Tort*, 21 Mich. L. Rev. 495 (1923); Hudson, *The Turntable Cases in the Federal Courts*, 36 Harv. L. Rev. 826 (1923); Noel, *The Attractive Nuisance Doctrine in*

378

*Tennessee*, 21 Tenn. L. Rev. 658 (1951) ; Wilson, *Limitations on the Attractive Nuisance Doctrine,* 1 N.C.L. Rev. 162 (1923) ; Harper & James, 2 *The Law of Torts*, sec. 27.5, pág. 1447 y ss. (1956).

█ Considerando las circunstancias de este caso estimamos que la parte demandante no fue temeraria y en consecuencia debe eliminarse la condena de honorarios de abogado.

*Por las razones expuestas en esta opinión se modificará la sentencia dictada en este caso por el Tribunal Superior, Sala de Ponce, en 8 de diciembre de 1961 en el sentido de eliminar la condena de honorarios impuesta a los demandantes y así modificada se confirmará.*