PEDRO LÓPEZ SURITA, ADELA SUÁREZ, DOMINGA LÓPEZ y JESÚS RUIZ, demandantes y recurridos, v. AUTORIDAD DE LAS FUENTES FLUVIALES DE PUERTO RICO y el ESTADO LIBRE ASOCIADO DE PUERTO RICO, demandados y recurrentes.

*Números:* R-65-25  *Resueltos:* 10 de junio de 1966
R-65-29

*José Antonio Arabía* y *Carlos M. Díaz Lamoutte,* abogados de la Autoridad de Fuentes Fluviales; *Frank Vizcarrondo Vivas,* abogado de los recurridos; *J. B. Fernández Badillo, Procurador General,* y *Elpidio Arcaya, Procurador General Auxiliar,* abogados del Estado Libre Asociado de Puerto Rico.

Sala Primera integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Hernández Matos, Rigau y Dávila.

EL JUEZ ASOCIADO SEÑOR RIGAU emitió la opinión del Tribunal.

Aníbal Ruiz López, un niño de 12 años 8 meses de edad, pereció ahogado el 3 de julio de 1963 dentro de un tubo de concreto que está al extremo de un canal de agua, los cuales—canal y tubo—forman parte del sistema de riego que opera la Autoridad de Fuentes Fluviales en el Valle de Lajas.

Aníbal vivía en las cercanías del canal, en el barrio Lajas Arriba del municipio de Lajas. Acostumbraba ir a jugar a casa de un niño pariente suyo llamado Ramón Enrique Suárez. La casa de Suárez queda como a sesenta pies del mencionado canal de agua. Aunque el canal tenía una verja de espeques y alambre de púas a lo largo de sus costados, había un espacio, precisamente el que queda contiguo al patio de la casa de Suárez, que no tenía cerca. Esto es, entre el patio de la casa de Suárez y el canal no había verja por ese lado. (Esto puede apreciarse bien en la fotografía que es el Exhibit 1 de la demandada. Consta también en la prueba oral.)

El canal está descubierto en su parte superior y tiene fondo y paredes de concreto. El agua corre de este a oeste y como a 70 metros de la casa de Suárez y al oeste de la misma el canal termina en el mencionado tubo de concreto, llamado sifón. Allí la corriente de agua se vuelve subterránea.

El tribunal de instancia estimó que la velocidad de la caída del agua por el tramo del canal inmediatamente antes del sifón es tal que desde el sitio en que cayó el niño sólo habría tardado alrededor de 14 segundos en ser arrastrado por el

agua hasta la boca del sifón. Allí el agua impulsó al niño dentro del tubo, en donde el menor murió ahogado.

La inspección ocular demostró que en la boca del tubo quedaban dos varillas de hierro verticales empotradas en el cemento. También había unas seis marcas o ranuras verticales. En el momento de la inspección ocular el testigo Ingeniero Octavio Seda, Superintendente del Riego del Valle de Lajas, expresó que "Esto es donde estaban incrustadas las varillas cuando hicieron el sifón." Las varillas, de haber estado todas en su lugar, habrían evitado que un bulto grande, como el cuerpo del occiso, hubiese caído dentro del sifón.

Entre las conclusiones de hecho el Tribunal de instancia expresa que los empleados de la Autoridad de Fuentes Fluviales, hacía como tres meses antes de ocurrir el accidente, habían removido las varillas que allí faltaban para que no se acumulara allí basura que tapara el sifón. Como dos meses después de ocurrido el accidente la Autoridad repuso dichas varillas. Concluyó el Tribunal de instancia que de haber estado esas varillas de hierro cruzando la boca del sifón el día en que ocurrió el accidente, el menor Aníbal Ruiz López no hubiese perdido la vida. Continúa expresando el Tribunal de instancia que al caer el niño en el canal no recibió ninguna lesión seria que le hubiese privado del conocimiento, pues la única lesión que se le encontró fue una leve raspadura superficial en la mejilla que se le pudo haber producido dentro del sifón. La autopsia reveló que el niño murió ahogado. Expresa el Tribunal que la prueba pericial médica presentada por los demandantes fue al efecto de que en los 14 segundos que tardó el niño en ser arrastrado por la corriente hasta la boca del sifón el niño no se hubiese ahogado. El joven Ramón Enrique Suárez, quien tenía a la fecha de los hechos 18 años, y quien corrió hacia el sifón al ver caer a Aníbal dentro del canal, llegó a la boca del sifón cuatro o cinco segundos después de que la presión del agua arrastrara a Aníbal dentro del tubo. Concluye el Tribunal que de haber estado las varillas en su

sitio el joven Ramón E. Suárez hubiese podido sacar a Aníbal del canal sin consecuencia fatal alguna. El canal apenas tenía dos pies de hondo y menos de un pie de agua.

Con motivo del accidente la Autoridad de Fuentes Fluviales fue demandada por Pedro López Surita, abuelo materno y padre de crianza del occiso; por Adela Suárez, madre de crianza del menor; por Dominga López, madre y por Jesús Ruiz, padre del occiso. Solicitaban los demandantes compensaciones que montan a $70,000.00.

El Tribunal de instancia luego de concluir que el menor, quien se cayó en el canal al tratar de saltar por encima del mismo, incurrió en 20% de la negligencia y la parte demandada en un 80%, de estimar los daños sufridos por cada demandante por concepto de sufrimientos, pérdida de compañía y afecto y pérdida de derecho a alimentos futuros, sentenció a la parte demandada a pagar a Dominga López, madre del menor, $9,600.00; a Pedro López Surita, abuelo y padre de crianza, $8,000.00; a Adela Suárez, madre de crianza, $6,400.00 y a Jesús Ruiz, padre, $5,600.00. También le impuso a la parte demandada la suma de $2,500.00 por concepto de honorarios de abogado.

En su sentencia el Tribunal condenó a la Autoridad de Fuentes Fluviales y al Estado Libre Asociado de Puerto Rico a pagar solidariamente dichas sumas a los demandantes. La inclusión del Estado Libre Asociado se debió a que al llamarse el caso para juicio el abogado de la Autoridad de Fuentes Fluviales planteó la cuestión de que la parte intesesada era el Estado Libre Asociado y se basó en que la ley que creó el Sistema de Riego del Valle de Lajas dispone que el Estado Libre Asociado viene obligado a reembolsar a la Autoridad de Fuentes Fluviales todos los gastos en que la Autoridad incurra en la operación de este sistema.

Contra la sentencia del Tribunal Superior acudieron a nosotros la Autoridad de Fuentes Fluviales (Recurso R-65-

25), el Estado Libre Asociado (Recurso R-65-29) y los demandantes (Recurso R-65-7).

Los demandantes nos solicitaron que eliminásemos la conclusión sobre negligencia contribuyente del menor fallecido a que llegó el Tribunal de instancia. Al recurso de los demandantes dimos no ha lugar en 25 de febrero de 1965. Los otros dos recursos los consolidamos mediante nuestra resolución de 17 de noviembre de 1965 y los estamos resolviendo mediante esta opinión.

Los demandados citan en su apoyo el caso de *Vargas Rodríguez* v. *Fuentes Fluviales*, 86 D.P.R. 104 (1962). Dicho caso es distinguible del presente. En aquél se trataba de un canal ancho cuya "apariencia es la de un río." Allí el menor pereció ahogado en dicho canal y siguiendo la jurisprudencia que en el mismo caso se cita, este Tribunal relevó de responsabilidad a la demandada. Allí se concluyó que como regla general se han equiparado con los cuerpos de agua naturales aquellos cuerpos de agua artificiales que exhiben las mismas características que los primeros. En este caso se trata de una situación distinta. La causa inmediata de la muerte de Aníbal no fue su caída en un cuerpo de agua que tenía menos de un pie de hondo, sino que lo fue el haberse ahogado dentro del sifón adonde fue arrastrado por la corriente.

■ Concluimos con el Tribunal de instancia en que si las varillas de hierro que se pusieron originalmente a la entrada del sifón hubiesen estado allí el menor no hubiese sido arrastrado por el agua hasta dentro del tubo y no se hubiese ahogado allí. El Exhibit 13 de los demandantes, un folleto titulado *"Canal Safety, Safety in the Operation of Canals and Other Waterways Structures,"* ed. de 1958, publicado por el Departamento de lo Interior de los Estados Unidos, contiene una serie de explicaciones y fotografías sobre cómo las entradas de estos sifones o tubos que a veces es necesario poner en los extremos de estos canales de riego, pueden ser provistas de defensas para evitar que personas y animales sean

arrastrados por el agua hacia dentro de estos sifones. Estas medidas de seguridad pueden consistir de varillas o barras, de cables, de mallas, de tubos de metal, de planos en forma de escalones que permiten a una persona o a un animal subir y a la vez permiten el agua pasar entre dichos planos, etc. El Ingeniero Octavio Seda, Superintendente de Riego del Distrito de Riego del Valle de Lajas, declaró que sifones de la clase de éste envuelto en este caso, "de una velocidad grande antes de entrar [el agua] al sifón, hay en el Valle de Lajas solamente cuatro o cinco."

Es claro que proteger mediante varillas de hierro cuatro o cinco tubos de cemento de aproximadamente dos o tres pies de diámetro no representa una carga económica de tal naturaleza que ponga en riesgo la gran utilidad que para esa región del Valle de Lajas tiene dicho sistema de regadío, utilidad que reconocimos en *Vargas Rodríguez* v. *Fuentes Fluviales*, supra, y que aquí también reconocemos.

■ A la luz de los hechos de este caso llegamos a la conclusión de que debemos confirmar la sentencia del Tribunal Superior, pero es menester que la enmendemos. La sentencia condena solidariamente a la Autoridad de Fuentes Fluviales y al Estado Libre Asociado al pago de la compensación concedida. Enmendaremos la sentencia en el sentido de que sea la demandada Autoridad de Fuentes Fluviales la que deberá pagar dichas compensaciones y relevaremos al Estado Libre Asociado de responsabilidad. La Autoridad es la que opera y administra el sistema de Riego del Valle de Lajas y conforme la ley "pagará directamente todos los costos y gastos en que la misma incurra." 22 L.P.R.A. sec. 382. La Autoridad es una corporación pública con capacidad para demandar y ser demandada. Es a ella a quien corresponde pagar directamente a los demandantes la sentencia habida en este caso. No tenemos motivos para hacer otras alteraciones a la sentencia del Tribunal Superior.

*Por las razones anteriormente expuestas se confirmará la sentencia del Tribunal Superior, Sala de Mayagüez, dictada en este caso, el 11 de diciembre de 1964, enmendada en la forma antes dicha.*