Alejandro Díaz Colón, etc., demandante y recurrente, v. Autoridad de Tierras de Puerto Rico, demandada y recurrida.

Número: R-66-13    Resuelto: 13 de mayo de 1968

*Ernesto Maldonado Pérez, Juan A. Díaz Marchand y Tulio Villanueva Vázquez,* abogados del recurrente; *Castro & Castro,* abogados de la recurrida.

Sala Primera integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Blanco Lugo, Rigau y Ramírez Bages.

EL JUEZ ASOCIADO SEÑOR RIGAU emitió la opinión del Tribunal.

Se trata de una demanda de daños y perjuicios contra la Autoridad de Tierras por la muerte de un menor que pereció en un canal de riego de la Autoridad. El Tribunal Superior declaró la demanda sin lugar.

Los demandantes-recurrentes señalan los siguientes tres errores: (1) que el tribunal de instancia erró al apreciar la prueba y al formular conclusiones de hecho no sostenidas por la misma; (2) que el tribunal erró al aplicar a este caso la doctrina sentada en *Vargas Rodríguez* v. *Fuentes Fluviales*, 86 D.P.R. 104 (1962); y (3) que erró el tribunal al aplicar, sin decirlo, la defensa de asunción de riesgo o de negligencia contributiva.

Los errores señalados no se cometieron. Se trata de un accidente lamentable pero jurídicamente es un caso claro en que la demandada no incurrió en responsabilidad civil. La prueba demostró lo siguiente.

Para fines eminentemente públicos la Autoridad de Tierras opera sistemas de regadío. Dichos sistemas incluyen canales de riego, los cuales en el lugar de los hechos tienen una profundidad de tres pies siete pulgadas unos y de tres pies una pulgada otros. El occiso contaba trece años y medio de edad[1] y le faltaba una pulgada para tener cinco pies exactos de estatura. Los empleados de la demandada les tenían prohibido a los niños del vecindario que se bañaran en el canal del riego y los reprendían cuando los sorprendían haciéndolo. En algunas ocasiones los niños se echaban a correr cuando veían acercarse a algún empleado de la Autoridad. El día de los hechos, a las 12:30 P.M., unos niños

---

[1] Parte de los hechos se estipularon. Aunque se estipuló que el menor contaba 12 años, según el certificado de defunción nació el 26 de agosto de 1949. Falleció el 12 de febrero de 1963.

encontraron la ropa del occiso al lado del canal y más adelante encontraron su cadáver dentro del mismo. La autopsia reveló que su cavidad gástrica contenía 1,000 c.c. de comida (1 litro) lo cual hace probable que el niño se metió en el canal después de almorzar.

Los demandantes trataron de establecer que el agua corría rápidamente por el canal pero un perito declaró que allí el agua corría a razón de medio pie por segundo, o sea, a un poco menos de un tercio de milla por hora. En sus conclusiones de hecho el juez de instancia determinó que el agua corría "a una velocidad no mayor de un pie por segundo." Puede verse que esta determinación está sostenida por la prueba, aunque es un poco más favorable para los demandantes (dentro de su teoría) que la evidencia que en efecto se produjo—la declaración del perito antes mencionado. Los demandantes tenían interés en probar una velocidad más alta porque trataron de caracterizar al canal como más peligroso que lo usual.

Regresando a lo de la velocidad del agua es significativo que el testigo Juan Crespo, empleado de la demandada, explicó que una de las razones por las cuales él tenía prohibido que los niños se bañaran en el canal era que "obstruían el paso del agua." Esto parece indicar que el agua no corría allí muy velozmente.

Como bien determinó el tribunal de instancia, este caso cae claramente bajo la doctrina de *Vargas Rodríguez* v. *Fuentes Fluviales*, supra. Allí la situación era muy similar a la del caso de autos, excepto que quizás era un poco más favorable para los demandantes y sin embargo nos negamos a imponer responsabilidad a la demandada. Allí el menor ahogado contaba tres años y cinco meses de edad, mucho menos que en el caso de autos. Allí se determinó que el agua corría a razón de dos pies por segundo y que el canal tenía siete pies de fondo.

■ En *Vargas Rodríguez* resolvimos, y aquí reiteramos, que esos canales de riego tienen características muy parecidas a las de cualquier corriente natural de agua; esto es, ríos y riachuelos. Podemos reconocer que los ríos, riachuelos y canales de agua tienen cierta atracción para todos— niños y mayores—pero difícilmente puede pretenderse que los dueños de predios por donde discurren ríos, riachuelos y canales los cubran o que mantengan allí una fuerza de guardianes o de salvavidas. No son peligros atrayentes dentro del significado técnico jurídico de la frase. En *Vargas Rodríguez*, supra, citando otras autoridades dijimos a la pág. 109:

"El canal, como puede observarse, tiene las características de una corriente natural de agua y no puede considerarse como un peligro atrayente mayor que un río que discurre a través de la ciudad, o de uno de sus estanques o lagos. . . . Si no hay ninguna necesidad de cercar o cubrir una corriente de agua natural, tampoco vemos ninguna necesidad mayor que obligue a levantar una cerca o cubrir un canal, y no vemos mayor distinción entre una situación y la otra desde el punto de vista de la doctrina del peligro atrayente."

■ Como señalamos en *Pérez Vázquez* v. *Sucn. Amill*, 89 D.P.R. 370, 375 (1963), y en *Díaz* v. *Central Lafayette*, 66 D.P.R. 827, 829 (1947), la doctrina de peligro atrayente exige a los propietarios que tomen precauciones para proteger a los niños que no se dan cuenta del peligro a que se exponen pero esa doctrina está contrapesada o balanceada con la política judicial de no imponer restricciones gravosas e irrazonables al uso de la propiedad. En *Pérez Vázquez* señalamos los dos intereses que aquí están en conflicto, el de velar por la seguridad de los niños y el del uso razonable de la propiedad. Esta última consideración cobra en este caso mayor fuerza porque no se trata aquí de uso de propiedad privada sino de una obra y una actividad de incuestionable uso y beneficio público.

■ Por otro lado, los tribunales han reconocido que los niños conocen el peligro que representa el agua, el fuego y la altura. *Vargas Rodríguez*, supra, pág. 108 y autoridades allí citadas. Ciertamente un niño de trece años y medio reconoce el peligro que esos elementos envuelven para la vida humana. El hecho de que el canal estaba cerca de un poblado no hace de por sí inevitable la responsabilidad de la demandada, pues en un país como Puerto Rico, de una densidad poblacional de 700 personas por milla cuadrada donde la población está dispersa por toda la isla en pueblos, poblados, barrios y comunidades cercanas a las fuentes de trabajo, se hace prácticamente imposible que existan canales de riego, factorías o cualquier otra cosa que estén ubicados lejos de todo vecindario o poblado.

■ Hemos examinado nuestra jurisprudencia sobre la doctrina de peligro atrayente y casos relacionados y hemos encontrado que la misma es desfavorable para los recurrentes. Los hechos del caso de autos no lo colocan dentro de dicha doctrina. (²)

*Se confirmará la sentencia del Tribunal Superior, Sala de Arecibo, dictada en este caso en 10 de diciembre de 1965.*

---

(²)*López Surita* v. *A.F.F.*, 93 D.P.R. 601 (1966); *Murcelo* v. *H. I. Hettinger & Co.*, 92 D.P.R. 411 (1965); *López Reyes* v. *Emmanuelli*, 90 D.P.R. 689 (1964); *Pérez Vázquez* v. *Sucn. Amill*, 89 D.P.R. 370 (1963); *Vargas Rodríguez* v. *Autoridad de Fuentes Fluviales*, 86 D.P.R. 104 (1962); *Bonilla* v. *Loíza Sugar Co.*, 67 D.P.R. 385 (1947); *Díaz* v. *Central Lafayette*, 66 D.P.R. 827 (1947); *Bernard* v. *P.R. Ry. L. & P. Co.*, 60 D.P.R. 218 (1942); *Ramos* v. *Sucn. Serrallés*, 51 D.P.R. 343 (1937); *Berríos* v. *Garáu*, 46 D.P.R. 799 (1934); *Pantoja* v. *American Railroad Co. of P.R.*, 45 D.P.R. 547 (1933); *Alvarez* v. *Santa Isabel Sugar Co.*, 37 D.P.R. 105 (1927); *González* v. *P.R. Ry. L. & P. Co.*, 34 D.P.R. 573 (1925); y *Rivera* v. *The Porto Rico Drug Co.*, 32 D.P.R. 510 (1923).