Luis Armando Ortiz, etc., demandantes y recurridos, v.
Levitt & Sons of Puerto Rico, Inc., demandada y recurrente.

*Número:* R-72-145          *Resuelto:* 18 de abril de 1973

*Antonio Córdova González, Pedro Toledo González,* y *Edwin Tayler Albizu,* abogados de la recurrente; *Rieckehoff, Calderón, Vargas & Arroyo,* como *amicus curiae; R. Elfrén Bernier, Plinio Pérez Marrero* y *Hjalmar Flax,* abogados de los recurridos.

EL JUEZ ASOCIADO SEÑOR DÍAZ CRUZ emitió la opinión del Tribunal.

El 6 de febrero de 1969 el niño de 13 años Luis Armando Ortiz Rivera, residente de Levittown, Toa Baja, pasó una cerca y se lanzó a bañarse al canal que separa las secciones 4ª y 5ª de dicha urbanización. A poco de nadar, regresó a la orilla a quitarse los zapatos *tennis* porque podía darle calambre; se lanzó nuevamente al agua, cruzó a la orilla opuesta, descansó, y cuando regresaba nadando de espaldas, se hundió. Su cuerpo sin vida fue extraído del fondo por un buzo profesional.

A la fecha de su deceso el joven Luis Armando cursaba el octavo grado, su promedio académico era de 3.00 equivalente a "B", su coeficiente de inteligencia era de 118 que le daba rango en el tope o nivel superior formado por el 15% de su grupo escolar.

El referido canal de 15 a 20 pies de profundidad, es parte del sistema para disponer de aguas pluviales de Levittown que desembocan en un lago artificial. A la fecha del suceso el canal estaba aislado en ambos lados por verjas de alambre eslabonado de cuatro a cinco pies de altura y en toda su extensión tenía rótulos prohibiendo bañarse o pescar en el mismo. Personas no identificadas ocasionalmente rompían las cercas para ganar acceso al canal pero la corporación demandada tenía una brigada de mantenimiento que se encargaba de restaurarlas, cerrando los rotos con alambres.

Los padres y hermanos del niño ahogado trajeron esta acción de daños y perjuicios bajo dos teorías: Primero, que el canal constituía un peligro atrayente y Segundo, que el niño que es residente de Levittown era un *invitado* de la urbanizadora demandada, inducido por ésta a residir allí y a disfrutar de deportes acuáticos, en la propaganda o anuncios transmitidos por los distintos medios publicitarios. Aceptando ambas teorías, el tribunal de instancia condenó a la demandada al pago de una cuantiosa indemnización.

En el decurso de nuestra jurisprudencia hemos adoptado como guías para fijar responsabilidad por mantener una condición peligrosa atractiva para niños, unas reglas tomadas de *Restatement, Torts,* sec. 339 citadas en *Pérez Vázquez* v. *Sucn. Amill,* 89 D.P.R. 370, 375 (1963), así:

"Un poseedor es responsable de daños corporales recibidos por niños que entran sin permiso en su propiedad, causados por una estructura u otra condición artificial que él mantenga en el terreno, si

'(a) el sitio donde se mantiene la condición es uno que le consta al poseedor o que le debe constar que está sujeto a transgresión por los niños; y

'(b) la condición es una respecto de la cual el poseedor sabe o debe saber y comprende o debe comprender que envuelve un irrazonable riesgo de muerte o grave daño corporal para tales niños; y

'(c) los niños, debido a su edad, no descubren la condición o no comprenden el riesgo envuelto en intervenir con ella o en invadir el área que se tornó peligrosa debido a tal condición; y

'(d) la utilidad que recibe el dueño proveniente del mantenimiento de tal condición resulta pequeña si se compara con el riesgo que la misma envuelve para los niños.' ".

'(e) el poseedor omite ejercitar el cuidado razonable para eliminar el peligro o de otra forma proteger los niños.' " (1)

---

(1) Adición al texto original. Véanse *Díaz* v. *Central Lafayette,* 66 D.P.R. 827 (1947); *Vargas Rodríguez* v. *Fuentes Fluviales,* infra; y *Serrano* v. *P.R. Cement Corp.,* 99 D.P.R. 405, 413 (1970).

■ La acción de la demandada manteniendo verjas protectoras a ambos lados del canal de desagüe, preservándolas y restaurándolas cuando agentes extraños las rompían y fijando letreros claramente legibles en que se prohibía bañarse o pescar en el canal, satisface las normas de previsibilidad en protección de los niños que recorren esos predios. Si a dichas medidas preventivas añadimos las cualidades de desarrollo intelectual del joven occiso que no permiten atribuirle rasgos de ingenuidad, inmadurez y poco juicio que le vedaran conocer el peligro una vez desatendida la prohibición de los rótulos y rebasada la verja erigida a lo largo del canal, no tenemos presente la figura de peligro atrayente.

Un compañero de clase del niño Luis Armando Ortiz aporta en su testimonio el dato de que éste no fue víctima de la ignorancia. En su deposición admitida en evidencia, declara su condiscípulo Miguel Aníbal Rivera Deiter, conocido por Deiter:

"P. Tú sabías ese día del accidente que allí uno no se podía bañar?

R. Sí.

P. Tú habías comentado ese hecho, o sea, que allí uno no se podía bañar, alguna vez con el muchachito que se ahogó?

R. Ajá.

P. Lo habías comentado?

R. El mismo día, precisamente. El mismo día que nos íbamos planeando para ir para allá, pero habíamos comentado de que si nos cogía el 'watchman', nos podía regañar. Porque otras veces, la patrulla de la policía, los había cogido y se los llevaba para el Cuartel de Cataño, hasta que los padres los iban a buscar. Pero con todo y eso, él se tiró." (Páginas 12 y 13 de la deposición.)

■ El requisito letra (c) de las guías citadas en *Pérez Vázquez* v. *Sucn. Amill*, supra, que incorpora la edad del niño. como factor determinante ha sido modificado por recientes desarrollos en la interpretación jurídica realista sustituyendo la inteligencia, madurez y experiencia del niño por su edad cronológica. No debe preocuparnos el número mágico de años

que convierte al niño en sujeto incapaz de sucumbir ante un peligro atrayente. Lo que verdaderamente concierne en una adjudicación de este tipo es su capacidad para apreciar o percibir el peligro. 16 A.L.R.3d 51(b). El reconocido comentarista Prosser al adoptar este nuevo criterio en su artículo *Trespassing Children*, 47 Calif. L. Rev. 427, 440, se expresa de este modo:

"Aparte de ser un método puramente arbitrario para disponer de casos difíciles y molestosos sin entrar a considerar los hechos, esta antigüalla [la edad límite de los 14 años] no presenta nada que la haga estimable."

■ Cada caso que surge ha de resolverse sobre sus propios hechos y circunstancias, y ninguna regla estricta o inmutable puede basarse únicamente en la edad, debiendo la norma integrarse por la inteligencia, conocimiento o experiencia del niño afectado; el grado o medida de obligación en cada caso habrá de determinarlo la capacidad que corrientemente posean y usen los niños de la edad y desarrollo de la clase a que pertenece el individuo afectado. 16 A.L.R.3d 262.

Mucho antes de que la voracidad de los complejos industriales secara los manantiales y antes de que el sistema gubernamental de riego suplantara nuestras lagunas por canales y embalses cuyas aguas alimentan las turbinas generadoras de energía eléctrica, a lo largo del tiempo y de la historia nuestros niños, especialmente los de montaña adentro, han nacido y crecido junto a los ríos y los lagos, libres en sus juegos y caminatas, cuidándose instintivamente de los peligros del agua como se cuidan del borde de los precipicios en la sierra agreste, a pesar de que su cuna y la primitiva docencia de su ambiente no les dieron las aptitudes excepcionales de inteligencia, vocación de estudio y serenidad que los recurridos le atribuyen al niño ahogado. Preservó sus vidas la temprana y asustadiza noción de peligro que el ser humano intuye desde los albores de su existencia ante la presencia del fuego, los cuerpos de agua, el ruido intenso o el abismo.

*Vargas Rodríguez* v. *Fuentes Fluviales*, 86 D.P.R. 104 (1962); *Díaz Colón* v. *Autoridad de Tierras*, 96 D.P.R. 42 (1968).

No hace diferencia que el canal estuviese ubicado en un área de gran extensión poblacional. Puerto Rico es uno de los países más densamente poblados y sólo el retorno a la plácida vida pastoral sin represas hidroeléctricas, ni lagos artificiales, ni contaminación ambiental de mayor o menor grado, lograrían eliminar de un todo las inconveniencias de esta era industrial. *Díaz Colón*, supra.

En el caso que nos ocupa no tenemos que rebasar nuestras fronteras del Mar de las Antillas en busca de precedentes. Bástanos releer el Art. 1802 de Código Civil (31 L.P.R.A. sec. 5141). "El que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado."

█ Sólo la libertad, en el orden de valores humanos, es más respetable que la vida; y en este accidente lamentable se extinguió la vida de un prometedor joven de 13 años. Pero no bastan la aflicción y la rudeza de esta tragedia para hacer de este caso uno compensable *ipso facto*. Nuestro ordenamiento civil enmarcado en el Art. 1802 exige culpa o negligencia de parte de quien cause el agravio antes de que pueda imponérsele la obligación de indemnizar. No encontramos que la demandada haya incurrido en ningún tipo de negligencia que la haga responsable por los hechos que dan lugar a esta reclamación.

*Se revocará la sentencia dictada por el tribunal de instancia y en su lugar se dictará otra declarando sin lugar la demanda.*

El Juez Asociado, Señor Martínez Muñoz, no intervino.